*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 11b0005n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:<br>    Triton Enterprises, Inc.,<br><br>              Debtor.<br>_____<br><br>Robin Brock,<br>            Appellant-Trustee,<br><br>v.<br><br>Randy Hammonds; Clifford Hammonds,<br>           Defendants,<br><br>Mark David Craft; Cotton Coal Company, Inc.;<br>Randy Cook; Mike Cook; KWVA Energy, Inc.;<br>M&R Trucking, Inc.; Ram Trucking Company,<br>           Defendants-Appellees. | No. 10-8049 |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky (Pikeville)
Case No. 05-71583; Adv. P. No. 07-7014

Argued: May 3, 2011

Decided and Filed: July 7, 2011

Before: FULTON, HARRIS, and RHODES, Bankruptcy Appellate Panel Judges.

1

## COUNSEL

**ARGUED:** John P. Brice II, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellant. Laura Day DelCotto, DelCOTTO LAW GROUP PLLC, Lexington, Kentucky, for Appellees. **ON BRIEF:** John P. Brice II, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, C. Randall Tackett, Whitesburg, Kentucky, for Appellant. Laura Day DelCotto, Christina E. Hayne, DelCOTTO LAW GROUP PLLC, Lexington, Kentucky, for Appellees.

## OPINION

STEVEN RHODES, Bankruptcy Appellate Panel Judge. This appeal arises from an adversary proceeding brought by the trustee seeking to set aside alleged fraudulent transfers, and seeking a judgment for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. The bankruptcy court entered findings of fact and conclusions of law on May 13, 2010, holding that the trustee had not met her burden of proof on the issue of fraud or any other alleged misdeed. For the reasons that follow, the Panel AFFIRMS.

### I. ISSUES ON APPEAL

The trustee's brief identified seventeen issues on appeal, but her brief did not actually argue all of these issues. At oral argument the Panel requested the trustee's attorney to identify and address the trustee's strongest arguments. In response, counsel primarily addressed challenges to the bankruptcy court's factual findings leading to the judgment for defendants. Specifically, the trustee challenges the bankruptcy court's factual findings relating to its conclusion that the defendants did not control the debtor corporation and did not cause its principal to usurp a corporate opportunity or divert the profits to the defendants.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed de novo. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004). Under the clearly erroneous standard, the Panel must give deference to the bankruptcy court as the finder of fact. *Sicherman v. Diamoncut, Inc. (In re Sol Bergman Estate Jewelers, Inc.)*, 225 B.R. 896, 904 (BAP 6th Cir. 1998). The bankruptcy court is in the best position to assess the testimony and credibility of witnesses. *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 297 (BAP 6th Cir. 2008). *See also Ramsey v. United Mine Workers of Am.*, 481 F.2d 742, 747 (6th Cir. 1973) ("Thus, however we might individually view the evidence if we were the triers of fact, it is clear that we are required to give great weight to the findings of the trial court which had the opportunity to see the witnesses, to weigh their evidence as it was presented, to view the demeanor of the persons who testified in court, and to determine all issues of credibility.") (citing Fed. R. Civ. P. 52(a)). The Supreme Court has explained the clearly erroneous standard as follows:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1165-66 (6th Cir. 1996) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75, 105 S. Ct. 1504, 1511-12 (1985)).

## III. FACTS

In this appeal, the trustee challenges many of the bankruptcy court's factual findings. The following is a summary of the facts that are either not in dispute or that the bankruptcy court found and which the Panel does not find to be clearly erroneous.

Randy Hammonds, who previously had some experience in hauling coal and clearing sites for "house seats," decided to try his hand at mining a gob pile. On January 8, 2003, Hammonds caused his corporation, Triton Enterprises, to enter into a written coal lease with Herman Bates for the purpose of mining the "Thorton Gob Pile." The Triton lease was for a one year term, renewable upon agreement of both parties.

In early 2003, Hammonds approached Chuck Cornett about assisting him in the mining endeavor. Cornett was a licensed foreman and had experience as a surface mine boss. Cornett then approached Billy Logan, also an experienced mine boss, about the deal. Hammonds, Cornett and Logan entered into a profit sharing agreement on February 17, 2003. The profit sharing agreement did not explain how contributions, whether capital or sweat equity, would be made, but simply provided that profits would be split equally among the parties. At some point, the parties came to an understanding that the permits would need to be held by a corporate entity. Hammonds indicated that his company, "Triton," could be used as the corporate entity. Cornett and Logan agreed, as long as they had the same deal. The parties did not execute any further agreement or formally substitute Triton for Randy Hammonds.

The parties began the mining operation, with all the parties contributing some capital, equipment and time. The lease with Bates expired and was not renewed, although the parties continued to work on the gob pile for quite some time thereafter. At some point, Hammonds, Cornett and Logan had some sort of a disagreement. Hammonds testified that he believed that the other two were trying to squeeze him out, while Cornett and Logan testified that it was Hammonds, along with Mike & Randy Cook, that squeezed them out.

Eventually, Hammonds consulted an attorney. Hammonds testified that he believed that Bates would not renew the lease with Hammonds or Triton due to a dispute over royalty amounts. Hammonds further testified that the attorney encouraged him to find some way to work out the lease situation. On October 12, 2004, instead of renewing the lease with Triton, Bates executed a new lease with Clifford Hammonds, the father of Randy Hammonds.

On October 13, 2004, Triton entered into a purchase agreement for the sale of all the permits and mining operations to a newly formed entity called Cotton Coal. The purchase price was $40,000. Cotton Coal operated the mine for more than three months and used Triton's bank accounts while the transfer of the permits was in process. Cotton Coal made a profit during that time. The final bill of sale was dated February 11, 2005.

Cornett and Logan sued Hammonds and Triton in state court. Triton filed bankruptcy on October 15, 2005. Cornett and Logan filed proofs of claim asserting an unsecured debt of $933,333.33 each. The trustee filed this adversary proceeding seeking to set aside the transfer of Triton's assets to Cotton Coal. The adversary proceeding also sought monetary recovery from Mike and Randy Cook, the two individuals that the trustee asserted controlled Cotton Coal and participated in a conspiracy to defraud Triton's creditors.

The adversary complaint contained the following counts: Count I - fraudulent transfer of mining permit pursuant to § 548; Count II - recovery from the Cook defendants pursuant to § 550; Count III - aiding and abetting breach of fiduciary duty pursuant to Kentucky state law; and Count IV - fraudulent transfer of payments to the Cooks pursuant to § 548.

After trial, the bankruptcy court concluded that the trustee had not proven her case and ruled for the defendants, adopting and entering the defendants' proposed findings of fact and conclusions of law.[1]

---

[1] At trial, the court utilized a procedure under which the proponent of each witness submitted an affidavit of the witness in lieu of direct testimony, and then the opposing party cross examined

## IV. DISCUSSION

### A. The Cook Defendants' Control Over Triton, Hammonds and Cotton Coal

The resolution of several counts in the complaint turned on whether the trustee proved that the Cook defendants, Mike and Randy Cook and their corporations, controlled Triton Enterprises, Randy Hammonds, Cotton Coal and its principal, Mark Craft, and that they used those entities to usurp the mining opportunity from Triton to the detriment of its creditors. The trustee asserts that following the money through to the Cook defendants proves their wrongdoing.

The bankruptcy court held:

> The Trustee has not proven any facts that establish that Cotton Coal or Craft was a "conduit" or a "strawman" for the Cook Defendants or that the Cook Defendants received any benefit from the Transfer.
>
> The Court finds the Trustee's arguments weak that the Cooks "manipulated" or "controlled" the many persons that the Trustee alleges . . . . The Trustee's "theory" and innuendo that the Cooks were Cotton Coal, or that they set up and controlled Cotton Coal, completely lacks any evidentiary or legal support. No evidence of [sic] legal authority for "piercing" Cotton Coal's corporate veil was presented.

(Dkt. 169 at 21.)

---

the witness. The Panel recognizes that the conduct of a trial is left to the trial court's discretion and further recognizes that this procedure can save valuable trial time. Nevertheless, the Panel cautions against using this procedure when there are significant factual issues. In such cases, the credibility of the witnesses is crucial to the court's findings and to the resolution of the case. The procedure used by the bankruptcy court deprived it of the valuable opportunity to evaluate the demeanor and credibility of the witnesses as they testify in their own words in response to open-ended direct examination questions. Instead, the procedure leaves the court with the substantially reduced opportunity to evaluate the demeanor and credibility of the witnesses based simply on their yes and no answers to leading questions on cross examination.

6

The bankruptcy court summarized its factual findings regarding the Cook defendants' involvement at paragraphs 44-53 of its findings of fact and conclusions of law. (Dkt. 169 at 14-17.) The trustee challenges many of these findings. One of the trustee's main challenges is to paragraph 51, which states:

> There is no proof in the record to indicate that the challenged payments from Triton's account were for anything other than compensation for the hauling services or rental equipment provided on the Thorton Gob Pile job. Payments from Cotton Coal are irrelevant to the Plaintiff claims.

(Dkt. 169 at. 16.)

The trustee challenges both parts of this factual finding. The first part is in regards to payments from Triton's account. The trustee argues that the bankruptcy court's factual finding is clearly erroneous because she did present evidence that the Cook defendants received $38,772.57 that was unaccounted for by the bookkeeper's records. The trustee argues that these payments were a direct siphoning of profits by the Cook defendants. The trustee argues that this is "conclusive proof that the Cook defendants so controlled both Triton and Cotton that" they could direct those entities to pay them what would have otherwise been profit.

However, the trustee's evidence regarding payments is not conclusive proof. It is merely circumstantial evidence from which the trustee argued that the Cook defendants controlled other parties. The bankruptcy court declined to make that inference. A review of the trial testimony reveals that all of the witnesses described a business environment where unwritten contracts, loans, and "helping out" family and friends were commonplace practices. The bankruptcy court's factual finding at paragraph 50 recognized the type of environment in which this business transaction took place. Moreover, the bankruptcy court found "credible the testimony from the Cooks and Craft that the Cooks had no ownership or control of Cotton Coal." (Dkt. 169, ¶ 52 at 16).

7

The trustee also asserts that the bankruptcy court's finding that "Payments from Cotton Coal are irrelevant to the Plaintiff claims" is clearly erroneous and must be reversed. In her brief, the trustee admits that "[a] Trial Court may weigh the proof of these payments against all of the other evidence and decide it is lacking, but it must at least consider the evidence, not dismiss it as irrelevant." The trustee also cites FRE 401, governing the relevancy of evidence. It is important to note, however, that the bankruptcy court did not exclude the trustee's evidence on the basis of irrelevance. In fact, the evidence was admitted, and at the beginning of the findings of fact and conclusions of law, the bankruptcy court stated that it considered all of the evidence presented. Therefore, it appears that the bankruptcy court did not use the term "irrelevant" to indicate that it was not considering the evidence, but rather, to indicate that it found the evidence unpersuasive. Indeed, the bankruptcy court's factual findings in paragraph 49-51 show that it considered the evidence regarding the services that the Cooks provided and the payments that the Cooks received, and found that both were typical for business in that county.

The standard of review for factual findings is clearly erroneous, and the determination of the credibility of witnesses is left to the sound discretion of the trial court. The bankruptcy court's factual findings and conclusions of law include citations to the record that support the court's findings and conclusions. The bankruptcy court did not abuse its discretion in determining credibility. Clearly, none of the witnesses were sophisticated. The court's descriptions of the manner in which they conducted business is supported by the evidence of the parties' levels of education. In holding that there was "no proof" that the challenged payments were for anything other than hauling services or equipment rental, the bankruptcy court was simply rejecting the trustee's theory that the unaccounted payments were for something else. Instead, the bankruptcy court accepted the witnesses' testimony that they were paid for hauling services and equipment rentals and that they simply did not keep very good records of the payments that they were entitled to receive. Accordingly, the Panel affirms the bankruptcy court's factual findings on these issues.

8

### B. Alleged Errors Regarding Valuation

Another key component of the trustee's arguments is the profitability of the mine. The trustee argues that the $40,000 sale price was significantly lower than the "anticipated value of $2,800,000 in profit." (Appellant's Br. at 31). The trustee argues that the actual performance of the mining operation after Cotton Coal purchased it resulted in a profit of approximately $400,000. The trustee further argues that the payment of $14,100 (the amount the trustee alleges was the final reduced cash price) is per se not reasonable.

The bankruptcy court rejected these arguments, finding that the trustee had not met her burden of proof. The bankruptcy court relied upon the only expert witness presented, William Bishop. Bishop's affidavit opined that the value of the permit was $30,000-$40,000.

The trustee challenges the bankruptcy court's finding that, "There was no evidence on the quality or recovery percent for the 250 tons of coal mined." (Dkt. 169, ¶ 11 at 19.) In so finding, the bankruptcy court relied on Bishop's affidavit and testimony on cross examination, which indicated that he did not receive any documentation about the quantity or quality of the coal at the gob pile. The trustee points to the testimony of Hammonds, Cornett and Logan that the wash percentage was 41%. When asked where he got the 41% figure, Logan testified, "I seen it on a piece of paper." (Dkt. 155 at 153.) Similarly, Cornett testified, "I talked to- - me and Bill talked about it. I think it was like 41 percent or something, maybe, or better." (Dkt. 155 at 134.) Finally, although Hammonds also testified to 41%, the court could properly discredit that testimony because it was based on Hammonds' "refreshed recollection" after reviewing an unidentified and unadmitted document with a handwritten notation indicating 41%.

The trustee asserts that the testimony regarding the wash rate undermines the Cook defendants' testimony as to valuation because their expert had no wash data to support his valuation. While there was some testimony about the wash rate, it was only uncorroborated testimony with no supporting documentation. Perhaps the bankruptcy court should have said there is no "credible

9

evidence" on the quality or recovery percentage rather than "no evidence." However, none of the witnesses were experts, and their testimony was based on some handwritten notes that contradicted a report that none of them could substantiate and that was not admitted into evidence. Accordingly, the Panel finds that the bankruptcy court did not err in its factual finding on this point. Moreover, the expert addressed the fact that he did not have documentation of the wash data, and stood by his conclusion as to valuation. The bankruptcy court did not err in accepting the testimony of the expert witness.

The trustee did not present an expert witness on valuation. Instead, the trustee relied solely on the speculation of Randy Hammonds, Chuck Cornett and Billy Logan as to the profits of the mining operation and some inconclusive evidence on the actual profits that Cotton Coal derived from the mining operation.

In the present case, Triton received $28,700 in cash for the permit. In addition, Triton received another $25,900 when the bonds posted by Cotton Coal reverted back to Triton. Accordingly, Triton received over $50,000 for a permit that the only expert to testify valued at $30,000-$40,000. Accordingly, the bankruptcy court's conclusion that the trustee did not prove that Triton received less than reasonably equivalent value is not clearly erroneous.

### C. Aiding and Abetting Breach of Fiduciary Duty

Under Kentucky law, "where a person in a fiduciary relationship to another violates his duty as a fiduciary, a third person who participates in the violation of duty may be liable to the beneficiary." *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 486 (Ky. 1991) (citing *Whitney v. Citibank, N.A.*, 782 F.2d 1106 (2d Cir.1986)). To prevail on a claim for aiding and abetting a breach of fiduciary duty, the plaintiff must prove that the defendants "knew of the breach and knowingly joined or aided and abetted the actions constituting the breach." *Gundaker/Jordan Am. Holdings, Inc. v. Clark*, 2009 WL 2390162, *3 (E.D. Ky 2009) (citing *Miles Farm Supply, LLC v. Helena Chem. Co.*, 2008 WL 3010064, at *6 (W.D. Ky. Aug.1, 2008); *Steelvest*, 807 S.W.2d at 485).

The bankruptcy court described the trustee's claim as follows:

> The Trustee's theory is essentially that Randy Hammonds breached his duty to refrain from self-dealing, i.e., that he stripped the value of the profits from the Thorton Gob Pile job out of Triton, and gave the "profits" of the job to Cotton Coal, which was a "strawman" for Mike Cook and Randy Cook. The Trustee has further contended that Randy Hammonds breached his fiduciary duties to Triton by transferring the Permit to Cotton Coal for less than fair value and by putting "Triton's" lease into Clifford Hammonds' name, thereby depleting all the Debtor's assets and preventing the Debtor from mining the job itself.

(Dkt. 169 at 23-24.)

As previously discussed, according to the trustee's theory, the Cooks controlled Cotton Coal and its principal, Mark Craft, and used these entities to aid Hammonds in usurping the corporate opportunity from Triton and selling it to Cotton Coal.

Randy Cook testified that he and his brother were not involved in a conspiracy with Hammonds to take the corporate opportunity from Triton and use it for themselves. Mike Cook testified that they did not care who mined the gob pile and that they just wanted to get the haul. Additionally, Randy Hammonds denied that the Cooks were involved in his decision making with regard to Triton.

Ultimately, these issues turned on credibility. The bankruptcy court found Randy Hammonds' testimony credible and found that he was not trying to usurp Triton's business opportunity to defraud his creditors, specifically Logan and Cornett. Likewise, the bankruptcy court found that the testimony of Mike and Randy Cook was credible and that the Cook defendants did not knowingly assist or aid and abet Randy Hammonds in breaching a fiduciary duty to Triton. Because there is testimony in the record to support the bankruptcy court's findings on these issues, the Panel holds that these findings are not clearly erroneous. Accordingly, the bankruptcy court did not err in concluding that the trustee had not carried her burden of proving that the defendants "knew

of the breach and knowingly joined or aided and abetted the actions constituting the breach." *Clark*, 2009 WL 2390162, *3.

## V. CONCLUSION

The Panel has throughly examined the record on appeal. Although the Panel has not addressed each of the issues raised on appeal in this opinion, it has considered each of the issues carefully. The Panel concludes that the bankruptcy court's factual findings are not clearly erroneous and that the bankruptcy court did not err as a matter of law. Accordingly, the bankruptcy court's judgment is AFFIRMED.